**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEVEN LANG KANAI, <br><br> Plaintiff, <br><br> v. <br><br> FRANCIS W. PARKER SCHOOL, <br> DANIEL B. FRANK, individually, and <br> CORY ZELLER, individually, <br><br> Defendants. | Case No. <br><br> **JURY DEMANDED** |

Plaintiff, Steven Lang Kanai, by and through his attorney, Daniel S Gajda of The Law Office of Daniel S Gajda, respectfully complains of Defendants Francis W. Parker School ("Parker"), Daniel B. Frank, and Cory Zeller, for tortious interference with prospective economic advantage, tortious interference with contract, and intentional infliction of emotional distress, and in support, states as follows:

**INTRODUCTION**

1. Since 2009, Mr. Kanai has found career success and satisfaction as a K-12 teacher. After working in a variety of teaching positions in the DC public school system, he decided to use his master's degree in English literature to teach literature in a private secondary school environment. He was a member of the English Department faculty at Gonzaga High School in Washington, DC, from 2011 to 2013.

2. After moving to Chicago, he joined the high school English Department at The Latin School of Chicago, and after serving as a long-term substitute teacher at Parker in early 2023, he accepted Parker's offer to join its English Department faculty for the 2023-2024 school year.

1

3. During the first few months of his employment, he enjoyed the school and received positive performance evaluations. However, on or around December 6, 2023, Mr. Kanai was shocked to learn that Parker was putting him on administrative leave based on a student's allegation.

4. On January 4, 2024, the head of the upper school at Parker, Cory Zeller, sent an email communication to the entire Parker upper school parent community ("January 4th communication to parents" or "January 4th email"). This January 4th communication to parents contained false and extremely damaging information about Mr. Kanai.

5. Couched as an allegation from a student, the communication indicated that Mr. Kanai had "violate(d) the appropriate and necessary boundaries between adult and student."

6. Although this January 4th email did not identify Mr. Kanai by name, it indicated that Parker had put the accused faculty member on administrative leave. Because Mr. Kanai had suddenly been, and continued to be, absent from his classroom, the communication left no doubt within the Parker community, including among parents, students, and other faculty members, that Mr. Kanai was the accused.

7. Following protracted and thorough investigation, the Chicago Department of Child and Family Services ("DCFS" or "Department") eventually exonerated Mr. Kanai in all respects. The Department closed its investigation on September 27, 2024, and officially concluded that the student's allegation was "unfounded." The Chicago Police Department reached a similar conclusion.

8. On September 27, 2024, Mr. Kanai, who had maintained his innocence all along, asked Parker's principal, Daniel Frank ("Mr. Frank"), to inform the entire Parker community of the exonerating investigation results. Mr. Frank refused.

9. On November 15, 2024, Mr. Frank sent a brief email to Parker faculty only. It informed them of DCFS's "unfounded" conclusion. However, he refused and continues to refuse to send even a single communication to the wider Parker parent community.

10. As a result, the wider Parker parent community continues to believe that Mr. Kanai was put on administrative leave, and eventually terminated, because he "violate(d) the appropriate and necessary boundaries between adult and student" and engaged in some kind of impropriety with a student.

11. Parker parents, like all parents, share information about their children and their children's teachers with other parents, including parents who send their children to other private schools in Chicago and elsewhere.

12. After a year of spotty, low paying "gig" employment outside his career field, Plaintiff was finally able to secure new employment as a secondary English teacher in May 2025. After an intense interview process, he secured a faculty position in the English Department at The Brentwood School ("Brentwood"), a private school in Los Angeles, for the 2025-2026 school year.

13. However, the false allegation widely disseminated by Defendants in the January 4th email quickly made its way from Parker parents to the Brentwood parents in Los Angeles. The Brentwood parents then raised their concerns about the allegations to the Brentwood principal, who contacted Mr. Frank, for clarification.

14. Mr. Frank again refused to set the record straight. He refused to indicate that Mr. Kanai had been exonerated of the allegations after a lengthy investigation by the Department.

15. As a result, the Brentwood principal told Mr. Kanai that he had to respond to his parents' concerns about the allegations by terminating Mr. Kanai's employment.

16. Thus, as a result of false allegation published by Defendants in the January 4th email, Plaintiff's employment with Brentwood ended just as the school year was starting.

17. At the present time, as a result of Defendants' false and defamatory January 4th email, Plaintiff's once-promising prospect of future employment in his chosen career are now dim to non-existent.

18. Plaintiff has suffered extreme emotional distress throughout this two-year ordeal and that distress continues to the present.

19. Knowing that his personal and professional reputation has been destroyed by Defendants' widespread publication of a false allegation of child abuse, a heinous crime, Plaintiff has suffered severe mental anguish (sleeplessness, constant worry, depression, loss of motivation).

20. Plaintiff's mental anguish has been so severe that he has sought regular professional psychotherapy to treat it. The extreme emotional distress has also produced bodily harm (heart irregularities requiring hospitalization, headaches, sleep deprivation).

21. Mr. Kanai suffered, and continues to suffer, severe humiliation and embarrassment from the knowledge that a broad swath of parents, students, and colleagues believe he committed, or at least may have committed, a serious crime against a minor, a crime of moral turpitude.

22. Additionally, he has suffered extreme and even paralyzing anxiety from the knowledge that Parker's false and improper communication to the entire Parker community would make it difficult, if not impossible, for him to secure another position at another school.

23. As the tragic facts have played out, Mr. Kanai's anxieties have proven to be well-founded.

## THE PARTIES

24. Plaintiff, Steven Lang Kanai, is an individual currently residing in Los Angeles County, California. He performed all functions as an employee of Defendant, Frances W. Parker School, while residing in Illinois, and he received all communications concerning the false allegation, including the January 4th email to parents, from Defendant in Illinois until he moved to California in July 2025 for the purpose of beginning new employment with Brentwood.

25. Defendant, Frances W. Parker School is a private school in Chicago, IL that serves children in various grades. Organizationally, it is a non-profit organization, chartered under the laws of Illinois, that relies primarily on student tuition for revenue.

26. Defendant Daniel B. Frank (hereinafter "Frank") is an individual and the long-time principal of Parker. On information and belief, he is currently a resident of Cook County, Illinois.

27. Defendant Cory Zeller (hereinafter "Zeller") is an individual and the head of the upper school (high school) of Parker. On information and belief, she is currently a resident of Cook County, Illinois.

## JURISDICTION AND VENUE

28. This Court has jurisdiction over the present action pursuant to 28 U.S.C. 1332 because the matter in controversy exceeds $75,000 and the opposing parties are citizens of different states.

29. Venue is proper in this forum pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Illinois. Plaintiff signed his contract with Defendant in Illinois and performed his teaching duties in Illinois. Defendant Parker exists

as a nonprofit educational institution under the laws of Illinois Parker, by and through employees, committed the tortious activity in Illinois. The individual-named Defendants also committed their tortious activity in Illinois.

## COUNT 1
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

30. Plaintiff restates and realleges paragraphs 1 through 29 as paragraph 30 of this Complaint.

31. Before the tortious activities described here, Plaintiff had a reasonable expectation of entering into, and continuing, a valid business relationship with Parker parents and other members of the educational community in Chicago and elsewhere.

32. This expectation was based on Plaintiff's educational credentials, which include a Master's degree in English from Georgetown University, and his years of positive and successful teaching.

33. Before the tortious activities described here, Plaintiff had already developed a positive relationship with Parker parents and many other members of the Chicago educational community, and these relationships had a pecuniary value to Plaintiff.

34. Parker parents, who pay a steep tuition, are the clients of the school. Consequently, a teacher must cultivate a positive relationship with the parents, the school's clients, to secure their present employment with Parker, and to help secure new employment with any future employer.

35. Similarly, a teacher must cultivate a positive relationship with his fellow educators, who will supply the references and job opportunities for future employment.

36. Defendants knew that Plaintiff had a reasonable expectation of entering into, and continuing, a valid business relationship with Parker parents and other members of the educational community in Chicago and elsewhere.

37. Defendants learned of Plaintiff's reasonable expectation during the interviewing process that led Defendant Parker to hire Plaintiff as an upper school teacher only months before the false and defamatory January 4th email.

38. During this process, Defendants learned of Mr. Kanai's educational credentials, past teaching experience, and aspirations.

39. Defendants also learned of Plaintiff's expectations by observing the positive relationship Plaintiff had already developed with Parker parents and other educators before the January 4th email destroyed those relationships.

40. Defendants intended to interfere with Plaintiff's reasonable expectation when they widely published the false and defamatory email January 4th email.

41. Defendants knew that the January 4th email, given the heinous nature of the allegation, was certain to seriously damage Plaintiff's current and prospective relationship with Parker parents and Plaintiff's fellow educators.

42. They also knew, too, that it was certain to seriously damage Plaintiff's current and prospective relationship with all the persons with whom the Parker parents and fellow educators would share the false and defamatory allegation. Yet Defendants forged ahead with no regard for Plaintiff's rights or well-being.

43. Defendants knew on January 4th, before they sent the email, that the allegation was not true.

44. By January 4th, the allegation had not even been investigated and Defendants knew that it had not been investigated. At that time, they also knew other facts – including details about the source and substance of the allegations – to indicate that the allegations were probably not true.

7

45. Despite having ample reasons to conclude that the allegation was false, Defendants forged ahead to widely publish false and defamatory information they knew was certain to seriously interfere with Plaintiff's reputation and prospective business relationships.

46. Defendants' intentional interference with Plaintiff's prospective business relationships with Parker parents and the wider educational community was unjustified.

47. Defendant had no privilege to share an uninvestigated, heinous, and improbable allegation with the entire school community. Admittedly, the uninvestigated allegation affected the legitimate interest of the Defendants because they had a duty to investigate the allegation and protect the student body.

48. Based on this legitimate interest, Defendants had a qualified privilege to share the allegation with the Department, to trigger an investigation, and with a limited group of Parker personnel.

49. However, publishing the uninvestigated and improbable allegation to the entire Parker community through the January 4th email did not serve to protect that interest and was, therefore, not privileged.

50. Even if Defendants had a qualified privilege to publish the uninvestigated and improbable allegation to a limited group, their January 4th email blast was an abuse of that privilege.

51. Defendants' publication of an uninvestigated and improbable allegation that Plaintiff committed a heinous crime showed a reckless disregard for Plaintiff's rights and interests, including a failure to properly investigate the truth of the allegation, to limit the scope of the publication, or to publish the allegation only to the proper parties.

52. Defendants' actions meet all the elements of the separate tort of defamation. Interference with prospective economic advantage is improper and unjustified if it occurs by means of an entirely separate tort.

53. Defendants' intentional and unjustified interference with Plaintiff's prospective business relationships has prevented, and continues to prevent, Plaintiff from realizing his reasonable expectancy. Defendants' interference has destroyed Plaintiffs' once promising career as a secondary teacher of English literature.

54. The January 4th email was *per se* defamatory because it imputed that Plaintiff had committed a serious crime and it imputed his personal and professional integrity. As such, damages are assumed.

55. The assumed damages are also Plaintiff's actual damages and they include economic loss, mental suffering, personal humiliation, and the impairment of his personal and professional reputation and standing in the community.

56. Defendants' actions in this regard were willful and malicious warranting the imposition of punitive damages.

**COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT**

57. Plaintiff restates and realleges paragraphs 1 through 29 as paragraph 57 of this Complaint.

58. Plaintiff entered into the contract for employment for the 2025-26 school year with The Brentwood School in Los Angeles, CA, with the expectation that he would likely continue his employment into the indefinite future.

59. In August, 2025, the Brentwood administrators circulated a newsletter to parents to welcome them to the new school year. The newsletter included a description of the

school's new faculty members and their brief bios. The newsletter's description of Plaintiff included his previous association with Parker, and this prompted one or more parents of Brentwood to contact one or more parents of Parker.

60. As a result of the January 4th email blast, the email's false and defamatory information quickly spread from Brentwood parent to Brentwood parent and then to the top administrators of Brentwood.

61. Within days, the Brentwood School principal told Plaintiff that the concerns of the school's parents regarding the allegation in the January 4th email had grown too great for him to ignore. Those concerns, the principal indicated, made it impossible for Brentwood to continue Plaintiff's employment.

62. Plaintiff had no choice but to work out a severance agreement with Brentwood that was far from the years of well-rewarded employment that Plaintiff had reasonably expected at Brentwood.

63. As a result of Defendants' tortious interference, Plaintiff has suffered both assumed losses and actual losses.

64. The actual losses include economic loss, mental suffering, personal humiliation, and the impairment of his personal and professional reputation and standing in the community.

65. Defendants' actions in this regard were willful and malicious warranting the imposition of punitive damages.

**COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

66. Plaintiff restates and realleges paragraphs 1 through 29 as paragraph 66 of this Complaint.

67. Defendants' acts, including the publication of a false and defamatory allegation against Plaintiff to the entire Parker community on January 4, was extreme and outrageous.

68. The nature of the allegation – that Plaintiff had engaged in some kind of intimate relationship with a student – is both morally reprehensible and a serious crime.

69. Yet, despite the extremely serious nature of the allegation, Defendants blasted the uninvestigated and improbable allegation to the entire Parker community.

70. Defendants extreme and outrageous behavior toward Plaintiff continued when they refused to help Plaintiff rehabilitate the reputation they had destroyed after Plaintiff was fully exonerated by an independent outside investigation.

71. Defendants intended to inflict severe and extreme emotional distress on Plaintiff and knew that such distress was certain to result from their false and defamatory January 4th email.

72. Alternatively, they acted with reckless disregard for the probability that their email would cause Plaintiff to suffer such severe and extreme emotional distress.

73. Plaintiff in fact suffered severe and extreme emotional distress because of Defendants' extreme and outrageous acts.

74. Defendants' acts, including the January 4th email blast, actually and proximately caused the Plaintiff's severe and extreme emotional distress.

**WHEREFORE**, Plaintiff, Steven Lang Kanai, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Francis W. Parker School, Daniel B. Frank, and Cory Zeller, jointly and severally for lost wages, including backpay, front-pay, and compensatory damages, and for non-monetary relief, including, but not limited to, a letter to the Parker community and to the public generally reporting the findings of the investigation exonerating Plaintiff, and against Defendants Francis W. Parker School, Daniel B. Frank, and Cory

Zeller individually for punitive damages, and for such other and further relief this Court deems just and equitable.

**Plaintiff Demands a Trial by Jury for All Issues Which May Be So Tried.**

                                              Respectfully submitted,

                                              <u>by: /s Daniel S. Gajda</u>
                                              Plaintiff's Attorney

Daniel S. Gajda
Attorney No. 6328491
The Law Office of Daniel S. Gajda
548 Hawthorne Ave.
Bartlett, IL 60103
630-639-6214
danielgajda@gmail.com