**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN LANG KANAI,<br><br>Plaintiff,<br><br>v.<br><br>FRANCIS W. PARKER SCHOOL, DANIEL B. FRANK, individually, and CORY ZELLER, individually,<br><br>Defendants. | Case No. 25-cv-15792<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Francis W. Parker School, Daniel B. Frank, and Cory Zeller (collectively "Defendants") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, Defendants' Motion to Dismiss [14] is granted in part and denied in part.

## I. Factual and Procedural background

The following factual allegations taken from the operative complaint [1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiff Steven Lang Kanai began working as a K-12 teacher beginning in 2009. [1] at ¶1. In 2023 Kanai accepted an offer from Defendant Francis W. Parker School ("Parker") to join their faculty. *Id.* at ¶2. Despite receiving positive performance evaluations, Kanai was placed on administrative leave on December 6, 2023 based on an allegation by a student. *Id.* at ¶3. On January 4, 2024, Defendant Cory Zeller

("Zeller"), head of Parker's upper school, sent an email to all Parker upper school parents ("January 4th email"). *Id.* ¶4. Defendants sent this email despite knowing that "other facts – including details about the source and substance of the allegations – to indicate that the allegations were probably not true." *Id.* ¶ 44. The January 4th email did not identify Kanai by name, and informed upper school parents that a faculty member was placed on administrative leave because they had "violate(d) the appropriate and necessary boundaries between adult and student." *Id.* ¶¶3-6. As Kanai was suddenly absent from class and continued to be absent from class, "the communication left no doubt within the Parker community . . . that Mr. Kanai was the accused." *Id.* ¶6. The Chicago Department of Child and Family Services ("DCFS") and Chicago Police Department investigated the allegations, with both finding the allegations were unfounded. *Id.* ¶7. The investigation closed on September 27, 2024. *Id.*

When the investigations concluded on September 27, 2024, Kanai asked Defendant Daniel Frank ("Frank") to inform the Parker community of the results of the investigation as part of Frank's role as principal. *Id.* ¶8. Frank refused, and on November 15, 2024, Frank sent an email informing only faculty of DCFS' conclusion. *Id.* ¶9. Frank did not send any additional information to parents. *Id.* The refusal to share this information means that the "wider Parker parent community continues to believe that Mr. Kanai . . . engaged in some kind of impropriety with a student." *Id.* ¶10.

Kanai struggled to find employment for several years, then secured a position at The Brentwood School ("Brentwood") in Los Angeles for the 2025-2026 school year. *Id.* ¶12. In August of 2025, Brentwood circulated a newsletter to its parents to introduce new faculty. *Id.* ¶59. The newsletter included a description of Kanai and his previous association with Parker; this prompted one or more parents of Brentwood to contact one or more parents of Parker. *Id.* The allegations against Kanai reached parents at Brentwood, leading the Brentwood principal to contact Parker Principal Frank. *Id.* ¶13. Frank "refused to set the record straight" and would not explain that Kanai "had been exonerated of the allegations." *Id.* ¶14. This led the Brentwood principal to terminate Kanai at the start of the 2025-2026 school year. *Id.* ¶¶14-15.

Kanai asserts that these events have made his prospect of future employment as a teacher "dim to non-existent." *Id.* ¶18-19. Since these events, Kanai has experienced extreme emotional distress, mental anguish, anxiety, heart irregularities, headaches, and ongoing humiliation and embarrassment from the knowledge that students and parents believe he may have committed a "crime of moral turpitude." *Id.* ¶¶18-21. Kanai has sought regular psychotherapy to manage these symptoms. *Id.* ¶¶20, 22. As a result of "Defendants' widespread publication of a false allegation of child abuse," Kanai has found it "difficult, if not impossible, [] to secure another position at another school." *Id.* ¶¶19, 22. Kanai is now suing Defendants for tortious interference with prospective economic advantage; tortious interference with contract; and intentional infliction of emotional distress. *Id.* ¶¶30-74.

On April 1, 2026, Defendants collectively filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* [13], [14]. Kanai filed a response in opposition on April 29, 2026, with Defendants filing a reply on May 20, 2026. *See* [18], [19].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotation omitted). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. Analysis

### A. Tortious Interference with Contract

This claim is easily disposed of. To state a claim for tortious interference with contract under Illinois law, a plaintiff must allege "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018) (citations omitted). The contract at issue here is the employment contract between Kanai and Brentwood. Complaint at ¶ 58.

An employment agreement is presumed to be an at-will arrangement unless there is evidence to the contrary. *Jacobeit v. Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653, 666 (N.D. Ill. 2009) (citation omitted). In *Cody v. Harris*, much like the situation here, a former employee sued his former employer and former general manager for spreading negative comments about him to current employers causing him to lose employment opportunities. 409 F.3d 853, 859 (7th Cir. 2005). The *Cody* court affirmed the dismissal of Plaintiff's tortious interference with a contract claim because "[u]nder Illinois law, '[a] defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations.'" 409 F.3d at 859 (quoting, *Prudential Ins.*

*Co. of Am. v. Sipula*, 776 F.2d 157, 162 (7th Cir. 1985); *Accurso v. United Airlines, Inc.*, 109 F. Supp. 2d 953, 962 (N.D. Ill. 2000); *Canel & Hale, Ltd. v. Tobin*, 304 Ill. App. 3d 906, 918, 710 N.E.2d 861, 871 (1999) ("[a]n action for tortious interference with a contract terminable at will is classified as one for intentional interference with prospective economic advantage,"); *Storm & Assocs., Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1052, 700 N.E.2d 202, 210 (1998) (citations omitted)("[a]n action for tortious interference with a contract which is terminable at will . . . is classified as one for intentional interference with prospective economic advantage,").

*Cody* is on all fours with the present case. Kanai does not respond to the fact that his Brentwood employment contract was an at-will contract and, therefore, as a matter of law, cannot form the basis of a tortious interference claim except to say that Defendants interfered with two contracts: his contract with Brentwood and his contract with Parker.[1] [18] at 15. That is a non-response.[2] Kanai has no contract that he can plausibly allege the Defendants interfered with. Plaintiff's tortious interference with a contract is dismissed with prejudice.

### B. Tortious Interference with Prospective Economic Advantage

To sufficiently state a claim for intentional interference with prospective economic advantage, "a plaintiff must allege (1) a reasonable expectancy of entering

---

[1] Parker cannot tortiously interfere with Kanai's contract with itself. Tortious interference requires a third-party. Any action in regard to the at-will Parker contract would be a breach of contract claim.

[2] *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, 229 N.E.3d 869, for the assertion that "[Defendants'] assertion that a contract is an indispensable component of a tortious interference claim is simply incorrect and not support by case law." [18] at 4. *Graco* is an interference with prospective economic advantage case. It says *nothing* about interference *with contract* cases, making Kanai's assertion misleading.

into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference."[3] *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, 229 N.E.3d 869, 875 (citation omitted). Kanai asserts that he had a reasonable expectancy of entering into a valid business relationship with Brentwood and Parker parents.

**i. Brentwood**

As already observed, Kanai's at-will contract with Brentwood establishes that Kanai had a reasonable expectancy of entering into a business relationship with Brentwood. *Canel and Hale, Ltd.*, 304 Ill. App. 3d at 918 ("[a]n action for tortious interference with a contract terminable at will is classified as one for intentional interference with prospective economic advantage"). Defendants argue they cannot be held liable under this theory because when they issued the January 4th email they did not (1) know about any Brentwood at-will contract; nor (2) intended to interfere with any expected business relationships. But the Complaint also alleges that the Brentwood principal contacted Parker principal Frank who "refused to set the record straight" and explain that Kanai "had been exonerated of the allegations." *Id.* ¶¶13-14. This led the Brentwood principal to terminate Kanai at the start of the 2025-2026

[3] Defendants do not challenge the fact that Kanai has plausibly alleged that he suffered damages.

school year. *Id.* ¶¶14-15. At this point, according to the Complaint, Defendants Parker and Frank knew about Kanai's business opportunity with Brentwood.

Defendants argue that, even crediting this allegation, the Complaint does not plausibly allege that Frank "induced" Brentwood to terminate the business relationship. Defendants rely on *Webb*, 906 F.3d at 579–80, for the proposition that "knowledge that one's conduct is substantially certain" to result in a breach does not itself constitute inducement. Kanai responds that intent is adequately alleged in the Complaint where he alleges that the January 4th email constituted defamation *per se*. Complaint at ¶¶44-45, 54 (alleging that the email was defamatory as it imputed that plaintiff "committed a serious crime and it imputed his personal and professional integrity"). This is a very close question. The evidence lies in the Brentwood principal's testimony regarding the phone call to Frank. As defendant's intent is often beyond the Plaintiff at the pleading stage and taking all the allegations in the light most favorable to Plaintiff, as the Court must at this stage, Kanai has plausibly alleged intent.[4]

**ii. Parker Parents**

In the Complaint, Kanai alleges that he had a reasonable expectancy of "a valid business relationship with Parker parents and other members of the educational community in Chicago and elsewhere." [1] ¶31. Defendants argue that this cause of

---

[4] As defendants argue, this is a high burden because "[t]he element of 'purposeful' or 'intentional' interference refers to some *impropriety* committed by the defendant in interfering with the plaintiff's expectancy." *Romanek v. Connelly*, 324 Ill. App. 3d 393, 406, 753 N.E.2d 1062 (2001) (emphasis added); Restatement (Second) of Torts § 766B (1979), Comment a, at 20 (1979). Kanai will be required to show that Parker and Frank acted "intentionally with the aim of injuring" Kanai's at will contract. *Romanek*, 324 Ill. App. 3d at 406.

action "fails as a matter of law," because Plaintiff had no contractual relationship with or expectancy of a business relationship with Parker parents or other members of the Chicago community. [14] at 9-10. The Court agrees.

Kanai's conclusory allegation aside (Complaint at ¶ 33-36, 41) (describing Parker parents as the school "clients"), Parker parents contract with Parker—not its teachers. There is not a plausible allegation that Kanai had an expectancy of business activities with Parker parents beyond his tenure at Parker. Kanai asserts that his claim of business expectancy with Parker parents is a "customary relationship" that has a great value for all teachers. [18] at 5. He argues it akin to "the opportunity to obtain customers [which] is an expectancy protected by the tort of interference with a business expectancy." [18] at 4-5. Kanai relies on *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 893 N.E.2d 981 (2008), to argue that his expectancy of a business relationship with Parker parents is protected. [18] at 4. Indeed, the court in *Chicago's Pizza,* did find that the opportunity to obtain customers is protected, but the trial evidence in that case established that Defendant pizza shop misled customers that it was *affiliated with* plaintiff's well-established restaurant. In such a scenario, the well-establish plaintiff's restaurant had business expectancy with those customers—they called defendant thinking they were calling plaintiff. Kanai's relationship with Parker parents is not such a business-customer relationship.

**C. Intentional Infliction of Emotional Distress**

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must allege "(1) the conduct involved was truly extreme and outrageous; (2) the actor either intended that his conduct inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct actually caused severe emotional distress." *Reitman v. Evanston/Skokie Cmty. Consol. Sch. Dist. 65*, 764 F. Supp. 3d 717, 731 (N.D. Ill. 2025) (citation omitted); *Milton v. Illinois Bell Tel. Co.*, 101 Ill. App. 3d 75, 81, 427 N.E.2d 829, 833 (1981) (intentional infliction of emotional distress requires the conduct is "so outrageous, extreme, and atrocious as to be considered intolerable in a civilized community.") "Whether conduct is extreme and outrageous is judged on an objective standard". *Doe v. Calumet City*, 161 Ill. 2d 374, 392, 641 N.E.2d 498 (1994).

The Court in *Welsh v. Commonwealth Edison Co.,* considered an IIED claim in the context of an employment relationship. In *Welsh* the plaintiffs alleged they were demoted, transferred, forced to perform "demeaning" and "humiliating" tasks, harassed, intimidated, and threatened with termination. The Court found they failed to state a cause of action because:

> in the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress. This reluctance seems to be grounded in a fear that, if the anxiety and stress resulting from discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action.

*Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154, 713 N.E.2d 679, 684 (1999).

Thus, Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious. *See, e.g.*, *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 561 N.E.2d 1245, 1251–52 (1990) (plaintiff stated a claims where the employer, knowing that the plaintiff was susceptible to emotional distress, offered her money for sexual favors, fired her after she refused, and after he fired her, threatened to kill her, to rape her, and to file a legal action challenging her rights to custody of her child and attempted to disrupt her new employment relationship); *Milton*, 427 N.E.2d at 833 (reversing trial court's dismissal of IIED claim where the employer engaged in an extensive course of disciplinary and harassing conduct to coerce the plaintiff to falsify work reports).

Significantly in the employment context, Illinois courts have denied recovery for distress resulting from recognizably reprehensible conduct which has been linked to an employer's legitimate interest. In *Lundy v. City of Calumet City*, 209 Ill. App. 3d 790, 567 N.E.2d 1101, 1103 (1991), the plaintiffs were police officers who failed to pass psychological test results indicated that the tests. They alleged that their supervisor stripped them of their badges, made public statements asserting that they had manipulated the tests or were suffering from mental illness, cloaked those statements as official findings, and purposefully sent the order to them publicly through other officers. *Lundy*, 567 N.E.2d at 1103. In affirming the trial court's dismissal of the complaint, the court emphasized the supervisor's legitimate interest in assuring the mental stability of his officers and explained that while a legitimate interest does not give an employer carte blanche to pursue that interest through any

means, the fact that an employer's conduct might cause an employee distress will not convert unactionable indignities into the extreme and outrageous conduct necessary for a recovery. *Lundy*, 567 N.E.2d at 1104–03.[5]

The Complaint alleges that Defendants' "publication of a false and defamatory allegation against Plaintiff to the entire Parker community on January 4" was extreme and outrageous." [1] at ¶ 67. Kanai argues that (1) Parker had the power to ruin his career, (2) Defendants intentionally perpetrated a false or probably false allegation of a heinous nature; (3) Defendants' conduct lasted approximately 16 months between their sending the January 4th email and their refusal to convey the exonerating information to Brentwood. During that extended period of time, Kanai suffered emotional distress. [18] at 16-17. Defendants argue that Kanai has not plausibly alleged outrageous conduct as their actions "fall squarely within ordinary institutional decision-making and compliance activity." [14] at 13.

Kanai fails to state a claim. The conduct alleged is not sufficiently extreme and outrageous to reach the high standard required to plausibly plead intentional infliction of emotional distress. Moreover, like the defendant in *Lundy*, *supra,* the

---

[5] *Compare Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (affirming jury verdict in favor of plaintiff on IIED where evidence showed employer forced plaintiff to climb up an unstable metal stairway to hook up computer equipment during her pregnancy; sabotaged her computer to deny her access and alter her files; publicly criticized her work during meetings with other supervisors; moved her office and her files, causing her to be unable to locate necessary paperwork; and increased her workload due under the PIPs, knowing that she would not be able to meet the deadlines); with *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 569 (7th Cir. 1997) (reversing IIED verdict for plaintiff where employer knew plaintiff suffered from a bipolar disorder, fired him because his disorder required him to work less hours, telephoned him at home while he was on vacation to inform him that he had been terminated and told him that he was being fired for low productivity finding such conduct did not exceeded all possible bounds of decency).

defendants had an objectively legitimate interest in sending a factually accurate email to the Parker parents about a mandated report having been made. This conduct does not approach the truly outrageous conduct required to state a claim for intentional infliction of emotional distress.

## IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [14] is granted in part and denied in part. Claim 2 is dismissed with prejudice. Claim 3 is dismissed without prejudice. Defendant Zeller is dismissed with prejudice. Claim 1 is limited to tortious interference with prospective economic advantage with Brentwood.

E N T E R:

Dated: November 19, 2026

Mary M Rowland

MARY M. ROWLAND
United States District Judge